CASE 36—PETITION EQUITY—APRIL 29.

## Crozier, et al. v. Cundall, et al.

APPEAL FROM GARRARD CIRCUIT COURT.

1. CONSTRUCTION OF WILL—DEFEASIBLE FEE.—A devise by a testator to two of his daughters of land "to them and their heirs, forever," in one clause of his will, but providing in a subsequent clause thereof that if either of them "should die without bodily issue, then such portion of my estate as is devised to them shall revert back to, and be equally divided between the rest of my children and the children of those who are dead," is a defeasible fee, and can be defeated alone by death without bodily issue.

2. RULES FOR CONSTRUING WILLS.—It is a recognized principle that in the construction of wills there can be no iron-clad rule applicable alike to all cases, but the application of all rules of construction must necessarily be varied by the language used by the testator, the object being to arrive at his intention, to be gathered from the entire will.

Crozier, et al. v. Cundall, et al.

3. JOINT DEVISE—SURVIVORSHIP.—Where a testator made a joint devise to two of his daughters, but providing that if either of them "should die without bodily issue, then such portion of my estate as is devised to them shall revert back to, and be equally divided between the rest of my children," although there was no right of survivorship as between the joint devisees, yet the death of one did not divest the other of her own interest; and the survivor takes under the will her share of the deceased sister's interest just as the other children of the testator do.

4. DEVISE—CONSTRUCTION.—The expression "the rest of my children and the children of those who are dead," means the testator's children and the descendants of his dead children *per stirpes*.

W. O. BRADLEY AND W. J. LANDRUM FOR APPELLANTS.

1. There is no repugnance in the two clauses of the will, and if there was, the last section must control. (Powell on Devises, vol. 1, p. 3; Parson on Wills, p. 33; Bouvier's Law Dic., title, Wills; Jarman on Wills, vol. 1, star p. 472; Hunt v. Johnson, 10 B. M., 352; Howard v. Howard, 4 Bush, 497.)

2. It is plain that the will, construed as a whole, conferred upon two maiden daughters a defeasible fee, which could become absolute only when these or one of them died leaving children. (Hughes v. Hughes, 12 B. M., 115; Wills v. Wills, 85 Ky., 490; Thackston v. Watson, 84 Ky., 210; Ferguson v. Thomasson, 87 Ky., 522; Wren v. Hynes, 2 Met., 129; Birney v. Richardson, 5 Dana, 424; Cornwall v. Falls City Bank, 92 Ky., 384; Sale v. Crutchfield, 8 Bush, 639; Webb v. Church Trustees, 90 Ky., 119; Holland v. Pruitt, 13 Ky. Law Rep., 868; Daniel v. Thompson, 14 B. M., 533; Gorham v. Betts, 86 Ky., 168; Deboe v. Lowen, 8 B. M., 618.)

3. It was not the intention of the testator that in the event of the death of one of the joint devises, without issue, the survivor should forfeit her interest in the property or in the part left by the deceased sister.

4. Under the testator's will the grandchildren take *per stirpes*. (Purnell v. Culbertson, 12 Bush, 371; Lochland v. Downing, 11 B. M., 30; Hill v. Hardin, 92 Ky., 88.)

R. P. JACOBS AND WM. HERNDON FOR APPELLEES.

1. The testator's will vested an indefeasible fee in the two daughters in case they survived the testator; and the words "dying without bodily issue," had reference to the death of the devisee *before* the death of the testator. (Birney v. Richardson, 5 Dana, 482; Hughes v. Hughes, 12 B. M., 116; Wren v. Hynes, 2 Met., 129;

Wills v. Wills, 85 Ky., 501; Ferguson v. Thompson, 87 Ky., 523; Martin v. Renaker, 10 Ky. Law Rep., 469; Trice v. Slaughter, 11 Ky. Law Rep., 678; Cornwall v. Falls City Bank, 92 Ky., 384.)

2. The language "shall revert back to and be equally divided between the rest of my chidren and the children of those who are dead," requires a *per capita* division. (Purnell v. Culbertson, 12 Bush, 370 and authorities there cited.)

3. The testator when he says "in the event that either one of my daughters, Patsey or Almyra, should die without bodily issue, then such portion of my estate as is devised to them shall revert back to, and be equally divided between the rest of my children and the children of those who are dead," can mean nothing else than that if *one* of them should die without issue, the portion devised to *both* shall be equally divided, etc.

JUDGE LANDES DELIVERED THE OPINION OF THE COURT.

This case is before us by appeal from a judgment of the Garrard Circuit Court, construing certain clauses of the last will of Abner Baker, deceased, who, being domiciled in Garrard county, died in 1861. His will was executed on the 6th day of October, 1856, and after his death his will was duly probated and admitted to record in said county. He was the father of thirteen children, ten of whom survived him, three having died before his will was made, each leaving children, of whom there were five altogether. All of his children, prior to the making of the will, had married and moved away from him, except two daughters, Almyra and Patsey, who were unmarried, the former being fifty and the latter thirty-seven years old at the date of the will. These two maiden daughters remained with him as long as he lived, and survived him many years—Patsey until December 24, 1891, and Almyra until December 14, 1893, and each of them died without ever having had issue.

The clauses of the will of the testator which are involved in this controversy are the fifteenth, the twenty-second and the twenty-fifth.

By the fifteenth clause he devised to his said daughters, Almyra and Patsey, a tract of about sixty acres of land in Garrard county and a tract of about forty acres in Lincoln county, and both of said tracts were devised *"to them and their heirs forever."*

Having by the fourteenth clause of his will, directed his executors to sell certain other lands belonging to him, by the twenty-second clause he required his executors to collect all debts and demands due him from any source whatever, and to pay all of his just debts and all expenses incident to the final settlement of his estate, and all bequests made by him in his will.  The following provision was then made, viz.:  "All my estate remaining after such settlement I will and bequeath to my daughters, Almyra Baker and Patsey Baker, *to them and their heirs forever*, with the understanding that they are to pay out of such remaining fund" certain sums to certain of his grandchildren.

The twenty-fifth clause is in the following words:  "In the event that *either one* of my daughters Patsey or Almyra, *should die without bodily issue*, then such portion of my estate as is devised *to them* shall *revert back to* and be equally divided *between the rest* of my children and the children of those who are dead; and if Kate Baker Denton or Harriet Baker Hopper die without issue, then that portion of my estate devised to them, or such one as shall die without bodily issue, shall be vested in my daughters Patsey and Almyra, to their use and benefit as above."

Kate Baker Denton is the wife of T. G. D. Cundall, and Harriet B. Hopper is the wife of W. P. McKee, and both, with their husbands, were made parties defendant to the action, and are appellees.

It seems that on the 23d day of December, 1879, the said

Almyra and Patsey Baker, being at the time residents of Macoupin county, Illinois, each made a will in favor of the other, using precisely the same language, and also making their two nieces above named, in the event of the death of either, the ultimate beneficiaries. The language of each of these wills is as follows: "I give and bequeath to my sister" (one naming Almyra and the other naming Patsey) "all of my estate of every character, real, personal and mixed; but, should she die before I do, I give and bequeath all my estate, of every character, equally to my two nieces, Hallie B. Hopper and Kate B. Cundall, for their sole and separate use, free from the control of any husband that either of them may have.

"Given under my hand and seal, this 23d day of December, 1879."

After the death of Almyra and Patsey, which occurred in Macoupin county, Illinois, where they still resided, each of said wills was probated and admitted to record in that county, and a copy of each of them was admitted to probate and record in Garrard county by the county court in pursuance of the statute, but this was not done until after the commencement of this action in the Garrard Circuit Court. Meantime Almyra Baker, by deed bearing date the 1st day of June, 1892, and which was acknowledged before and certified to by the county clerk of Macoupin county, Illinois, and on such authentication lodged and recorded in the clerk's office of Garrard county on the 23d day of July, 1892, for the expressed consideration of $1,000, and the further consideration of love and affection, conveyed to appellees Kate B. Cundall and Hallie B. McKee, the sixty and forty acre tracts of land "that were once owned by Capt. Abner Baker, now deceased, and by him willed to Almyra and

Patsey Baker, to have and to hold the same, with all the appurtenances thereon, to the second party, their heirs and assigns, forever, with covenant of general warranty."

The two wills of Patsey and Almyra Baker, and the deed of the latter referred to, were attacked in the petition, in which it seems all of the surviving descendants of Abner Baker joined, either originally or by amendment, except the appellees, Mrs. Cundall and Mrs. McKee and two others. They are set up and relied upon, however, in the answer of Mrs. Cundall and Mrs. McKee and their husbands in support of the title they claim to the two tracts of land, and the residue of the estate devised in the will of Abner Baker to his said daughters.

The questions at issue were raised by general demurrer of the plaintiffs to the answer of Mrs. Cundall and Mrs. McKee and their husbands, which was overruled, and by general demurrer of the latter to the reply of the plaintiffs to their answer, which was sustained; and in passing upon these demurrers the lower court held that the lands in controversy passed under the will of Abner Baker in fee simple to Almyra and Patsey Baker, and that by the wills of the latter and the deed of Almyra the said lands passed to appellees, Kate B. Cundall and Hallie B. McKee in fee simple. A judgment was accordingly entered dismissing the petition, and that judgment, on proper exceptions, is before us for review.

There is no doubt that the words in the fifteenth clause of the will of Abner Baker, by which the lands in controversy were devised to his daughters, Patsey and Almyra Baker, "to them and their heirs forever," were sufficient to vest them with absolute right and title to the lands at the death of Abner Baker, unless the title was made subject to

be defeated by the twenty-fifth clause of his will, by which it was provided that, in the event of the death of either of his said daughters "without bodily issue," the portion of the estate devised to them should "revert back to" and be equally divided between the rest of the children "and the children of those who are dead."

The same question has been passed upon by this court in many cases involving the construction of similar testamentary provisions.

In the case of Thackstun v. Watson, 84 Ky., 206, the rule applicable in construing such provision is stated as follows: "The settled and well understood construction in reference to such devises seems to be that where an estate is given or devised with remainder over, but in the event the remainderman should die without child or children, then to a third person, the words 'dying without children or issue' are restricted or limited to the death of the remainderman before the termination of the particular estate; and it is equally as well settled that if an estate is devised to one in fee but if he die without issue or without leaving a child or children then to another, the first devisee takes a defeasible fee, which is subject to be defeated in the event of his death at any period without issue."

In the case quoted from the cases of Birney v. Richardson, 5 Dana, 424, and Pool v. Benning, 9 B. Monroe, 623, are referred to, and they fully sustain the rule as stated.

The same rule is recognized in Moran v. Dillehay, 8 Bush, 434, in Parrish v. Vaughan, 12 Bush, 97, in Bayless v. Prescott, 79 Ky., 252, in Cleveland v. Cleveland, 5 Ky. Law Rep., 56, and in many other cases decided in this State. Counsel on both sides in their briefs have referred to many of these cases, which we will not review in detail. It is sufficient

to say that it will be found, upon examination of all of them,. that the differences, if any, that exist between cases are apparent rather than real, and that they have resulted, not from a deviation from this rule, but from the application of it to the facts of each particular case, because it is a recognized principle that there can be no ironclad rule applicable alike to all cases, but that "the application of all rules of construction must necessarily be varied by the language used by the testator, the object being to arrive at his intention, to be gathered from the entire will." (Hughes v. Hughes, 12 B. Monroe, 115; Wills v. Wills, 85 Ky., 492; Bradley v. Skillman, 3 Ky. Law Rep., 734.)   The most recent case of the kind decided by this court is that of Hood, &c. v. Dawson, 17 Ky. Law Rep., 880, in which the testator, after leaving all of his estate to his wife for life, at her death devised a certain farm to Jas. Wilson, son of Robert, with the provision that, if the devisee died "leaving no child or children of his own," the farm should go to certain nephews named in the will.   The court, in construing this provision of the will, recognized and approved the rule referred to, and said that " cases involving similar or substantially similar language in other testaments have so often been before this court that the meaning to be attached to the one now under consideration is believed to be a question of authority and precedent rather than of argument."

In this case it is contended by the learned counsel for appellees that the provision in the twenty-fifth clause of the will of Abner Baker, for the disposition of the property devised to his two daughters Patsey and Almyra, in the event either of them "should die without bodily issue," refers or is limited to the death of either before the death of the testator.   And so the lower court, in effect, held.

But, under the rule as stated, this can not be the proper
construction of that provision.  Patsey and Almyra were
not devisees in remainder.  They were to be the first takers
of the portion left to them under the will, and by the rule,
at the death of the testator, they took a fee in the property
in terms absolute, but subject to be defeated in the event
of their death without issue.  This, it seems to us, is the
plain meaning of the will thus ascertained, and there is
nothing in the will or in the circumstances of the testator
or of the objects of his care and bounty, as shown by the
record before us, that affords any indication that the testa-
tor had any other purpose or intention in this regard.

But Patsey and Almyra Baker having, under the will of
their father been vested with a defeasible fee in the lands
devised to them, the questions are raised, what was the
character of their respective interests therein, and what
effect, if any, did the death of Patsey have upon the interest
therein of Almyra, who survived Patsey; and what interest,
if any, in the property passed to the appellees, Mrs. Cundall
and Mrs. McKee, by the will of Almyra and by her deed
of June 1, 1892?  The answer to these questions is not diffi-
cult.  The property was devised to them jointly by the
fifteenth and twenty-second clauses of the will, without
any words of survivorship as between them, and there is
nothing in the will upon which we would be justified in
holding that it was the intention of the testator that, upon
the death of one of them, the other should succeed to the
whole of the property.  But it is contended that, by the
terms of the twenty-fifth clause of the will, the defeasance
therein provided, upon the death of either of them, was
intended to operate alike upon the title of both.  We do not
so construe this provision of the will.  The words are, "in

the event that *either one* of my daughters Patsey and Almyra should die without bodily issue, then such portion of my estate as is devised *to them* shall revert back," etc. Manifestly the use of the words " as is devised *to them*," in this clause, indicates that the testator understood fully that the interest his daughters would take in the property devised to them by the fifteenth and twenty-second clauses of his will would be a *joint* interest. But it would be too technical a construction to hold that he intended that the death of *either* of his daughters without issue should operate to divest the survivor of her interest in the property. Such a construction would be wholly inconsistent with any purpose the testator may have had to provide suitably for the comfortable support of *each* of his daughters after his death, because such a provision would have made it possible for the property intended for their enjoyment to be eventually divided, in the lifetime of the survivor, to others who had already been bountifully provided for by the testator during his life and by his will. We hold, therefore, that the titles of each of the daughters of the testator to her interest in the property devised to them jointly was a fee simple title, subject to be defeated alone by her death "without bodily issue."

It follows from the foregoing conclusions that Almyra Baker acquired no interest in the property in question under the will of her sister Patsey. But it also follows that upon the death of Patsey, Almyra, being one of the children of Abner Baker, became entitled, under the twenty-fifth clause of his will, to an interest in the moiety of Patsey in the portion of the estate that was devised *to them*, her title to which had been defeated by her death without issue. After the defeasance the words of the clause are "such portion

of my estate as is devised to them *shall revert back to and be equally divided between* the rest of my children and the children of those who are dead." It is immaterial whether we construe the words "revert back to" to refer to the estate or to the descendants of the testator, since, in our view, the result, in either case, would be the same.

The material question to be settled is, who were to become entitled to the property in controversy upon the defeat of the title of the first takers under the will? We hold that the words "the rest of my children and the children of those who are dead" mean his children and the descendants of his dead children, *per stirpes*, who were surviving at the death of Patsey and of Almyra respectively; so that, at the death of Patsey, the three surviving children of Abner Baker (Almyra included), and the descendants, *per stirpes*, of such of his other children as were then dead, became entitled, under the will, to an equal division *"between"* them of Patsey's interest in the property, and at the death of Almyra the children of Abner Baker and the descendants of his dead children, who were surviving at that time, became likewise entitled to an equal division *"between"* them of the portion of said property to which Almyra was entitled under the will.

A different construction of this last provision of the clause is contended for by counsel for appellees on the authority of Purnell v. Culbertson, 12 Bush, 370. The construction we have given to it, however, is fully sustained by the case of Lackland's heirs v. Downing's ex'ors, 11 B. Monroe, 32, which we follow. The two cases are not inconsistent, as each case stands upon its own distinguishing facts, which is recognized and explained in the former.

But, as we have seen, Almyra became entitled under the

will, as one of the surviving children of Abner Baker, to
a share of the portion of her sister Patsey, at the death of
the latter.    Therefore, under the will of Almyra, and by the
deed executed by her on the 1st day of June, 1892, the
appellees, Mrs. Cundall and Mrs. McKee, are entitled to
some interest in the property, but no more than was abso-
lutely vested in her by virtue of the will of Abner Baker
at the death of Patsey.    It will be the duty of the lower
court, in the progress of the action, to ascertain the extent
of their said interest, and to make such orders as will secure
it to them.

For the foregoing reasons the judgment of the lower
court is reversed and the cause remanded, with directions
to proceed in the cause consistently with this opinion.