Case 32.—ACTION BY MARY MORTON & OTHERS AGAINST GABRIELLE MORTON'S GUARDIAN FOR A CONSTRUCTION OF A WILL AND A SALE OF THE REAL ESTATE DEVISED.—March. 25.

120    251
132    787

## Morton's Gd'n v. Morton, &c.

Appeal from Jefferson Circuit Court, Chancery Branch (1st Division).

SHACKELFORD MILLER, Judge.

Judgment for Plaintiffs. Defendant appeals. Reversed.

Morton's Gd'n v. Morton, &c.

Wills—Construction—Contingent Remainders—Alienation—Perpe-
tuities—Judicial Sales—Statutes.

1. Wills—Construction—Testator devised his homestead to his two
cousins, M. and G., together with two store buildings, and
directed that the income of the stores should be used to main-
tain them and the homestead; that the home should never be
mortgaged or sold, and, that in event of the death of either of
the cousins, the interest of that one should belong to the other;
that, if G. should be the last to die, the home should be the
property of his daughter, but, if M. should be the last to die,
the property should go to her halfsister. Held—That the re-
mainder to G.'s daughter was not limited on the death of M.
before G. in the testator's lifetime, but depended on her
ultimate death before G.

2. Contingent Remainders—The interest of G.'s daughter was such
as, in the event of her death before her father and before
coming into possession of the property, would descend to her
children, or, in the absence of children, to her heirs at law, at
the death of her father surviving him.

3. Alienation—The daughter's interest under such will was not
limited to "the family home," but included the two stores de-
vised by testator for the purpose of maintaining such home
while in the possession of his own relatives and devisees.

4. Perpetuities—Judicial Sales—Where testator devised certain
property to his cousins for life, remainder to the survivor,
and then over to others, and declared that the same should
never be sold, such provision was void in so far as it at-
tempted to prohibit a sale after the vesting of the estate in
the remaindermen, under St. 1903, sec. 2360, providing that
the absolute power of alienation shall not be suspended for
more than the life or lives in being at the creation of the
estate and 21 years and 10 months thereafter.

5. Life Estates—Sale of—Civil Code, sec. 491, authorizes the sale
of a remainder or reversion in certain cases in a civil action,
but section 492 declares that no sale shall be ordered if for-
bidden by the deed, will or contract under which the prop-
erty is held. Held—That the provisions of section 492 are
mandatory, so that no sale of real estate held under a will
expressly prohibiting a sale thereof could be had during the
life estates, though consented to by both the life tenants and
remaindermen.

L. R. YEAMAN guardian ad litem for infant appellant.

1. If the words of survivorship be construed as referring to the period of the testator's death, then, since both Mary Morton and Gabriel Morton survived the testator, the result would be to vest in them all the property in fee simple. And under that construction the appellant, Gabrielle Morton, would have no interest whatever in any of the property. Upon this question of construction the court is referred to Wren v. Hynes, Adm'r, 2 Met., 129; Wills v. Wills, 85 Ky., 486; Crozier v. Cundall, 99 Ky., 202; Cooksey v. Hill, 20 Ky. Law Rep., 1873; Carpenter v. Hazelrigg, 103 Ky., 538.

2. But, in any view of the case, it would seem that the proposition of compromise made by the appellant's father and accepted by the statutory guardian is most generous, and decidedly to the interest of appellant. Under the terms of the compromise she would abandon a dubious claim to a contingent interest in property uncertain in amount, and receive in lieu thereof at once the absolute title to not less than $25,000.

3. The guardian ad litem fully realizes the importance to the appellant of the questions involved in the case, and he has given to it his best thought. But after careful consideration of the legal and practical questions which are presented, he is firm in the conviction that the statutory guardian exercised sound business judgment in advocating the acceptance of the offer, and that the interests of the appellant will be best subserved by an affirmance of the decree.

4. In view, however, of the important interests and the doubtful questions involved, he felt it to be his duty to except to the decree and appeal the case, in order that the rights of appellant might be finally ascertained by this court.

HUMPHREY, HINES & HUMPHREY for appellees.

1. Sec. 2030, Ky. Stats., provides that a guardian, "with leave of the court, may compound a debt or demand or settle or compromise any controversy concerning the lands of his ward, when the interests of the ward will be subserved thereby."

This is an appeal from a judgment allowing and effectuating a compromise of a doubtful and contingent claim of the appellant, who is an infant, which compromise was made in this action by appellant's guardian, with leave of the court, in pursuance of the authority conferred in the portion of sec. 2030, Ky. Stats., above quoted.

2. We submit that under sec. 2030, Ky. Stats., the guardian has

the express authority, with the leave of court, to compromise any and all claims which the infant, Gabrielle Morton, might have in the premises.

We submit with equal confidence that the compromise made is in the highest degree beneficial to the infant, Gabrielle Morton, and that the court properly approved and allowed it and carried it into effect, and, therefore, that the judgment of the lower court should be affirmed.

### AUTHORITIES CITED.

Ky. Stats., sec. 2030.

OPINION BY JUDGE SETTLE—Reversing.

The will of W. F. Norton, Jr., contains the following devise:

"I give to my nearest kin on earth, my two double cousins, Mary Morton and Gabrielle Morton, my house (the family home) 817 Fourth street between Broadway and York, Louisville, Ky., and every thing of every nature contained therein, and also my two stores in Paducah, Ky.—one occupied by the Hart Hardware Company, and one by Friedman, Kieler & Company, the income from said two stores which is payable monthly, to be used in the first place, in paying all taxes on said two stores and all taxes on the family home, above named, in Louisville, Ky. and the remainder of such income to go toward the maintenance of said aforesaid family home. In case it should be found out that the income from said two Paducah stores, after paying all the taxes named above there should not be left sufficient money to properly maintain the family home, then in that case under the advice of the executors named in my will said two valuable Paducah stores can be sold for the best possible price, for cash, and the proceeds of such sale must be deposited in the Fidelity Trust and Safety Vault Company, as a fund to be used only for the mainte-

nance of the family home, 817 Fourth street, Louis-
ville, Ky., which family home must never be mort-
gaged or sold. (My suite in said home consisting of
my room, my mother's room and bath room, must be
kept intact and never be used or occupied by any one.)
In the event of the death of either one of the two
cousins, named above, the interest of that one to
belong to the other of the two cousins. If Ga-
briel Morton should be the last to die, then the
said family home to be the property of his daughter,
Gabrielle Morton, for her own use, and abso-
lutely free from the use of her husband, if then
married or to be married thereafter; then on the other
hand, if Mary Morton should be the last to die, then
the family home to be the property of her half sister,
Aldine N. Morton, in her own right and absolutely free
and clear of the use of any husband she might then
have, or ever to have thereafter.''

This action was instituted by Mary Morton, one of
the devisees under the will of W. F. Norton, Jr.,
against her co-devisees, Gabriel Morton, Aldine Mor-
ton, and Gabrielle Morton, the latter being an infant
under 14 years of age, to obtain a construction of the
above clause and a sale of the real estate devised. The
Fidelity Trust Company, statutory guardian, of
Gabrielle Morton, was also made a defendant. It was
averred in the petition that by the devise in question,
the property therein named vested absolutely in fee
simple in Mary Morton and Gabriel Morton upon the
death of W. F. Norton, Jr., and that neither Aldine
Morton nor the infant, Gabrielle Morton, had any
interest whatever in any of the property devised.
This view of the matter was based on the theory that
the provisions of the devise as to how the property
should go in the event of the death of Mary Morton or
Gabriel Morton, or both of them, ought to be construed

as contemplating such death as occuring before that of
the testator., The parties named asked that the will
be declared to vest the fee-simple title to all the prop-
erty in Mary Morton and Gabriel Morton, and by an
amended petition it was averred that the property
(except the household furniture) could not be divided
without materially impairing its value. The court
was therefore asked to adjudge that all of it, other
than the household furniture, be sold, and the pro-
ceeds divided equally between Mary Morton and
Gabriel Morton. The answers of Gabriel Morton and
Aldine Morton adopted the construction of the devise
contended for by Mary Morton, and concurred in the
statements and prayer of the petition as amended.

From the averments of the answer of Gabriel Mor-
ton and that of the Fidelity Trust Company, guardian
of Gabrielle Morton, it appears that Gabriel Morton,
though denying that his daughter had any interest in
the property in question, in order to avoid any compli-
cation arising from the assertion of such interest in
her behalf by the guardian, proposed to the latter that,
if her claim to the entire property was released, and
it was allowed to be sold as the property of Mary
Morton and himself exclusively, he would give to
Gabrielle Morton one-half of his half of the proceeds
of the sale, and, in any event, not less than $25,000,
which sum was to go into the hands of her guardian
for investment on her account and for her benefit.
The compromise thus proposed was accepted by the
guardian upon the supposed authority conferred by
sec. 2030, Ky. St. 1903, which provides that a guardian
"with leave of the court, may compound a debt or
demand, or settle or compromise any controversy con-
cerning the lands of his ward, when the interests of
the ward will be subserved thereby." This compro-
mise the guardian presented to the court in its answer,

averring that it was highly beneficial to Gabrielle Morton to "secure an immediate and vested and sole interest in such a substantial amount of money in lieu of her uncertain, contingent, and remote interest in the property devised by the will," and the court's approval of the compromise was asked by the guardian. In view of the agreement existing between the guardian and the other parties to the action as to the propriety of an adjustment on the basis of the compromise, and in order to insure disinterested representation of the infant, it was thought proper to have a guardian ad litem appointed for her, which was done. It appears from the depositions of John W. Barr, Jr., and George W. Norton, executors of the will of W. F. Norton, and wholly disinterested witnesses, that the two Paducah stores are worth $45,000, the family residence $18,500, and that the contents of the family residence consist of a library valued at $26,000, and other personal property valued at $7,318.93; making the total value of the real and personal property $96,818.03. The witnesses were also of opinion that the proposed compromise would prove very beneficial to Gabrielle Morton. The chancellor, by the decree entered, approved the compromise, and in accordance therewith and the agreement of all the parties in interest adjudged that Gabrielle Morton had no interest whatever in the property in question, but that the whole thereof, by the devise in the will of W. F. Norton, Jr., went and belonged absolutely in fee simple to Mary Morton and Gabriel Morton. The decree directed that the personal property in the family residence, other than the library, be divided equally between Mary Morton and Gabriel Morton; that the library, family residence, and the two stores and lots in Paducah be sold, and the proceeds divided by giving one half to Mary Morton and the other half to the

Fidelity Trust Company, as guardian, out of which it should retain one half, and, in any event, not less than $25,000, for Gabrielle Morton, and pay the balance to Gabriel Morton. The guardian ad litem, being in doubt as to the correctness of the chancellor's construction of the devise made by the will of W. F. Norton, Jr., to the Mortons, prosecutes this appeal in behalf of the infant, Gabrielle Morton, to obtain the decision of this court upon the questions involved.

Numerous cases have been decided by this court in which it was held that, where an estate is given by will, which may be defeated upon the happening of a contingency, and there is no other period apparent or intended, in which the event shall occur, it shall refer to an event happening within the lifetime of the testator. (Wren v. Hynes, 20 Metc. 129; Wills v. Wills, 85 Ky., 486, 9 Ky. Law Rep., 76, 3 S. W., 900; Crozier v. Cundall, 99 Ky., 202, 18 Ky. Law Rep., 116, 35 S. W. 546; and Carpenter v. Hazelrigg, 103 Ky., 538, 20 Ky. Law Rep., 231, 45 S. W., 666.) But this rule does not obtain when the will shows on its face that the event to which the contingency refers is, in contemplation of the testator, to occur after his own death. (Hart v. Thompson, 3 B. Mon., 488; Moore v. Moore, 12 B. Mon., 660; McKay v. Merrifield, 14 B. Mon., 322; Harris v. Berry, 72 Bush., 114; Montgomery v. Montgomery, 11 Ky. Law Rep., 88, 11 S. W., 780; Varble, Jr., v. Phillips, 14 Ky. Law Rep., 364, 20 S. W., 306; Harvey v. Bell, &c., 26 Ky. Law Rep., 381, 81 S. W., 671.) If the words of survivorship contained in the clause of the will under consideration be construed as referring to the period of the testator's death, then, since both Mary Morton and Gabriel Morton survived the testator, the result would, of course, be to vest in them the title to all the property in fee simple, which

would necessarily exclude the appellant, Gabrielle Morton, from taking any interest whatever therein. But as was said in Wren v. Hynes, supra: "No fixed rule of interpretation can be established as applicable to words of survivorship, but that construction should be adopted which, considering the particular devise upon which the question arises, in connection with all the other provisions contained in the instrument, will be most likely to promote and effectuate the intention of the testator." We think the language of this devise clearly indicates that the testator intended the words of survivorship to refer, not to the period of his death, but to that time when one of his double first cousins actually survived the other. The words, "if Gabriel Morton should be the last to die," prove that the testator intended that the infant appellant should have the home place upon the death of her father, Gabriel Morton, if he survived Mary Morton, without any regard to when that survivorship took place. And this view is supported in the same way by the words, "if Mary Morton should be the last to die." In other words, Mary Morton and Gabriel Morton took a joint life estate under the will in the property devised, the interest of the one first dying to go to the other for life only, with remainder in fee as to the whole to Aldine Morton in case Mary Morton should survive Gabriel Morton, but to Gabrielle Morton if Gabriel Morton should survive Mary Morton. While it is true that the interest of appellant, Gabrielle Morton, under the will, is contingent upon her father, Gabriel Morton, surviving Mary Morton, it is such an interest as would, in the event of her death before her father and before coming into possession of the property, go to her children, or, if none, to her heirs at law, at the death of Gabriel Morton, if he should survive Mary Morton.

Being of the opinion, therefore, that Gabrielle Morton has a contingent interest in remainder under the will of W. F. Norton, Jr., that is a defeasible fee in remainder liable to be defeated by the death of Gabriel Morton before that of Mary Morton, it becomes necessary to determine whether that interest is confined to what the testator calls his "family home," or whether it extends to the contents of the home place and the Paducah storehouses and lots as well. This question is not free from difficulty. The language of the devise in so far as it affects the appellant, Gabrielle Morton, is: "If Gabriel Morton should be the last to die (i. e., if he survives Mary Morton), then the said family home to be the property of his daughter, Gabrielle Morton, for her own use," etc. While the above language does not in express terms include in the property devised appellant the Paducah storehouses, or the contents of the family home, yet, when the clause is read and considered as a whole, it is manifest that the testator desired and intended to provide a way and a means by which the family home should be maintained at least while it remains in the possession of his own relatives and devisees, for which reason he dedicated the income from the Paducah stores, and, if the need therefor should occur, the proceeds of the sale of that property, to the maintenance of the family home and "everything of every nature contained therein." We think, therefore, that the home, its contents, and the Paducah storehouses and lots, were linked together in the mind of the testator as one gift, and that it was his intention that the appellant, Gabrielle Morton, should have a contingent interest in all. Furthermore, that such was the intention of the testator is demonstrated by the fact that the provisions of the will requiring the income of the Paducah property

to be used for the maintenance of the family home could not, as he well knew, be carried out, without giving Gabrielle the use and enjoyment of it if she should become the owner of the home. If by the use of the language, "which family home must never be mortgageed or sold," the testator intended to forever prevent its alienation by any of his devisees or those who may take it as heirs at law of any of them, that provision of the will is violative of the statute against perpetuities (sec. 2360, Ky. St., 1903), which declares that "the absolute power of alienation shall not be suspended, by any limitation or condition whatever, for a longer period than during the continuance of a life or lives in being at the creation of the estate, and twenty-one years and ten months thereafter." To the extent, therefore, that the inhibition as to alienation of the property may have been intended to go beyond the vesting of the estate in Gabrielle Morton or Aldine Morton, if it was so intended by the testator, we think it is void. But it was manifestly the purpose of the testator to at least prevent the alienation of the family home, and of the Paducah stores as well (unless an earlier sale of the latter should become necessary for the maintenance of the family home), during the life tenancy of Mary Morton and Gabriel Morton; and as we are not prepared to say that the restriction to that extent would be unreasonable, we think it should be upheld. (Stewart v. Brady, 3 Bush, 623; Stewart v. Barrow, 7 Bush, 368; Rice v. Hall, 18 Ky. Law Rep., 814; Kean v. Kean, 13 Ky. Law Rep., 956, 18 S. W. 1032, 19 S. W., 184; Johnson v. Dumeyer, 23 Ky. Law Rep., 2243, 66 S. W., 1025; Wallace, &c., v. Smith, 24 Ky. Law Rep., 139, 68 S. W., 131; Lawson v. Lightfoot, &c., 27 Ky. Law Rep., 217, 84 S. W., 739.)

The next question to be considered is, should the

sale adjudged by the chancellor be approved by this court? Obviously, a sale of real estate owned as in this case would have to be made under sec. 491, Civil Code, and sub-sec. 1 of sec. 492 of the Code provides that in the actions mentioned in sub-secs. 3, 4, and 5 of sec. 489, and in sec. 491, "no sale shall be ordered if forbidden by the deed, will, or contract under which the property is held." The provisions of sec. 492, supra, are mandatory, and must therefore be obeyed. (Moore v. Thompson, 80 Ky., 424, 4 Ky. Law Rep., 303.) So, in view of the fact that the sale of the property in question is forbidden by the will of W. F. Norton, Jr., at least during the life tenancy of Mary Morton and Gabriel Morton, we are constrained to hold that the judgment of the chancellor directing its sale was unauthorized and improper. As the will does not authorize a sale of the Paducah property except upon the ground that it should become necessary to do so in order to provide a fund for the maintenance of the "family home," we think its sale for any other purpose is also forbidden by the provisions of the will.

In arriving at the conclusions herein expressed we are not unmindful of the benefits that would doubtless result to the infant appellant from the sale of the property in question and compromise agreed upon by the father and guardian, but to allow such a disposition of the property devised would be to utterly disregard the wishes and purpose of the testator, and, in effect, set aside his will without the form of a contest. As, in our opinion, the sale of the property should not be permitted, it is unnecessary to determine whether the statutory guardian of appellant had authority to effect the compromise made in her behalf.

For the reasons indicated, the judgment is reversed, and cause remanded for a dismissal of the petition.