Chief Justice Robertson
delivered the Opinion of the Court. Judge Marshall did not sit in this case.
This appeal is prosecuted for reversing a judgment in detinue, obtained by the appellees, Landie Richardson and Elizabeth Ford, as the surviving legatees of Thomas Richardson, their deceased father, against James Birney, the surviving husband of one of the deceased co-legatees, whom he married, in the year 1800, and who died in 1834, about a year prior to the commencement of this action, for fifteen slaves, fourteen of whom are the children and grand-children of the fifteenth, named Esther; who was the property of the testator, and who, then childless, was embraced in his will, which—having been admitted to record in 1789, in Fayette county, in this State, where the testator died—is in these words:— “ In the name of God, Amen—I, Thomas Richardson, “ of Fayette county, being weak in body but of sound “ mind, make and ordain this my last will and testament “ in manner and form following, to-wit—I lend unto my “ beloved wife Mary Richardson, all my estate, both “ real and personal, during her widowhood, and if she “ marries, at her marriage, for my whole estate, as above “ mentioned, to be taken out of her hands, by my executors, “ hereafter mentioned, and equally divided among “ my children Landie Richardson, Sally Richardson, “ Elizabeth Richardson, Lucy Richardson, and Mary “ Richardson—any or either of the above mentioned “ children should die without a lawful heir begotten of “ their body, then his or her part of the estate to be “ equally divided among my surviving children: I appoint “ my brother, William Richardson, James Richardson “ and James Arnet, to be executors of this my *425 “ last will and testament”—(dated, subscribed and attested, Feb. 2d, 1788.)
Further facts.
Judgment.
Lapse of time (5 years) operates as a divestiture of the title of one party to slaves adversely held by another; and detinue cannot he maintained on the title thus barred by time.
Legatees entitled to an undivided portion in slaves, cannot maintain detinue for the whole.
Legatees entitled to the remainder in slaves after a life estate (terminated,) may maintain an action to recover them, notwithstanding they may have been held ever so long (30 years in this case, by the tenant for life, or by her husband; for the plaintiff’s right does not accrue, in such case, till the death of the tenant for life: and her husband, (though he acquired the possession without the consent of the executor,) must be presumed to have held it, by the assent of the executor and co-heirs, according to the title of the wife, and not adversely to the devisees in remainder.
In addition to the foregoing facts, it appears, from the agreement of the parties submitted to the Circuit Judge: first—that, the persons nominated as executors having refused to undertake the trust, the testator’s widow was duly appointed administratrix with the will annexed. Second—that, about two years after the testator’s death, his widow intermarried with David Gillespie, since dead, she still surviving; and that, after their intermarriage, he was substituted as her surety in the administration. Third—that Mrs. Gillespie retained the possession of the testator’s whole estate, with the exception of some occasional advances to his children, and never made or expressly consented to any division, or allotment of it among them as legatees. Fourth—That all the legatees were minors and unmarried at the testator’s death; and that two of them, who married and died, between the marriage and death of Mrs. Birney, left children who are still living; and, fifth—that, not long after Birney’s marriage, the slave Esther was sent to him by Mrs. Gillespie, for temporary use as a nurse, and remained with him for some time, and afterwards, being again in her possession, was taken back by him without the express consent or sanction of Mrs. Gillespie, and was ever afterwards kept and used by him, apparently as his own property; and that, whilst Esther was so possessed and used by him, the other fourteen slaves, her children and grand-children, were born.
Upon these facts, the Circuit Judge, being of the opinion that the appellees had a legal right to all the slaves, gave judgment accordingly.
If the appellees have the legal right now to maintain this action, they must derive it from the death of Mrs. Birney without issue; for no claim to a vested right on *426 the marriage of their mother, would be available at this time, or in this action; because the lapse of time would operate as a legal divestiture, and also because, as legatees of interests accruing on their mother’s marriage, they do not appear to have been entitled to more than two undivided fifth parts of the testator’s estate. But if, upon Mrs. Birney’s death, her surviving co-legatees were entitled, by the will, to her interest in the testator’s estate, they might now recover the slaves in this form of action; because the facts authorize the deduction that—Birney having so long held and claimed them, as he must be presumed to have done, in his wife’s right as a legatee, the exclusive legal right to them, in that character, and as long, at least, as she lived, should be presumed to have been consummated by the implied consent of the co-legatees, and of the administratrix cum testamento; and the title of the appellees thus not having accrued until her death without issue, and which occurred only about a year prior to the institution of this suit, the statute of limitations could not apply.
The judg’t of a circuit judge, upon the facts and such inferences as a jury might draw from them, will be approved.
Grounds relied on by the appellant, for a reversal of the judg’t.
It was on such a construction of the facts and of the rights of the parties, that the Circuit Judge rendered the judgment now called in question; and if that be the proper interpretation, the judgment must be sustained; because the facts being, in our opinion, such as would have authorized a jury to infer that, at the time of her death, Mrs. Birney, or rather the appellant, in his right as her husband, was lawfully holding the exclusive title to the slaves in virtue of her right as a legatee, the like deduction by the Circuit Judge, deciding, under the agreement of the parties, upon both the law and the facts of the case, should be approved by this Court.
But even if, by dying without issue, the testator should be understood as intending the death of one of his legatees without issue—not between his own demise and either that or the marriage of his widow, or at any time before the legatees would be entitled to a division of the estate and the enjoyment of their legacies—but any such a dying, even at any subsequent period; and if, also, the appellant, as husband, should be considered as being, at his wife’s death, entitled as much to the slaves *427 as he would have been, had there been a formal, instead of a constructive, allotment of Esther to him, under the will—still he contends that the judgment is nevertheless erroneous: first—because, as he insists, the limitation was too remote, and was therefore void; and, second—because, if it was valid, the representatives of the two legatees who died leaving children, are entitled equally with the appellees, who cannot, therefore, maintain the action in their own names, and in their own right alone; and, third—because, as he contends, the will should be construed as having vested absolute and indefeasible interests in the legatees living at the time of the widow’s marriage; and because, also, as he insists, his title was, therefore, consummated by time.
A devise of the testator’s whole estate to his wife, as a loan to her during widowhood; on her marriage, the whole estate to be taken from her, and divided equally among the testator's children; the part of any dying without issue, to be equally divided among the survivors.
In 1788-9, when the will was made, and when the testator died, slaves (the subject of this controversy) passed by will as goods and chattels, and a limitation of them would have been legal and available, if not more remote than a good limitation of real estate, viz: after a life or lives in being, twenty one years, and the period of gestation; and, if the dying without issue is to be understood as a failure of issue at the death, and not as an indefinite failure, the limitation is not void.
Those terms, thus used, import—not an indefinite failure, but a dying without issue at the death of the first legatee: the devise, therefore, is not void for remoteness or indefiniteness.
Nor do they constitute an estate tail of real estate, or vest the personalty absolutely in the first legatee notwithstanding the devise over.
I. Upon the hypothesis which has been stated, the first of these objections cannot be sustained.
At the date of the will, and at the time of the testator’s death, slaves passed by will as goods and chattels; and a limitation of such property might, legally and availably, have been made as remote as of real estate, which would not have been void for remoteness or indefiniteness, unless it had been extended beyond a life or lives in being, and twenty one years, and the period of gestation; and therefore, if, by “dying without issue,” the testator should be understood as intending a failure of issue living at the death, and not an indefinite failure, there can be no doubt that the limitation was legal and effectual.
It is insisted, however, that, according to the ordinary technical import of those terms, unexplained, “ dying without issue” means an indefinite failure of issue; and that there is nothing in the will we are considering which should affect that fixed and arbitrary rule of construction; and that, consequently, as there might, in this *428 technical sense, be a failure of issue at some time beyond the maximum period of legal limitation, the bequest over in this case was void.
But—whatever may be now thought here, of this artificial constructive effect of the simple phrase, “ dying without issue,” as established by the common law, upon feudal principles peculiar to ancient devises of real estate, and often conflicting with the intention of the testator, which should be the controlling criterion for construing his will—there can be no doubt that, in a bequest of personalty—in regard to which the civil law also applies—“ dying without issue ” will always be interpreted rationally, according to the presumed intention of the testator, and will never, therefore, be construed as meaning an indefinite failure of issue, if, from the wholp context of the will, any other intention should be inferred. And it has been incontrovertibly settled, even in England, that when, in the event of a legatee’s death without issue, the contingent bequest over, is to a person that must be in being at the death, or even within twenty one years and a fraction thereafter, dying without issue will be understood as importing issue living at the death of the first legatee; wherefore, such a limitation will not be too remote. Therefore, as the ultimate limitation in this case was to the surviving brother and sister, the “dying without issue” necessarily imports, in judgment of law as well as in fact, issue living at the death of Mrs. Birney—if, as assumed, Mrs. Birney’s death be the event to which dying without issue refers; and, of course, even according to technical British law, the reasons of which are not altogether applicable here, the limitation was not too remote. Fearne on Remainders and Executory Devises, 471-2-3, and the cases there cited; Hughes vs. Sayre, 1 Pr. Wms. 532; and Moore’s Trustees vs. Howe’s Heirs, 4 Monroe, 199; 2 Roper on Legacies, 368.
Nor can we admit, as has been argued, that the bequest to Mrs. Birney would, had the estate been real, have constituted an implied estate tail, which, upon technical grounds, at common law, would have amounted to an absolute right in her to the personalty bequeathed, not *429 withstanding the bequest over in the event of her death without issue; because it is abundantly settled by adjudged cases, that whenever, in such a case, the limitation is not void in consequence of its remoteness, the intention of the testator will be upheld, and a remainder limited by will, even upon a fee simple interest, will be valid and available. Target vs. Grant, 1 Pr. Wms. 432; Forth vs. Chapman, Ib. 663; Lamply vs. Blower, 3 Atk. 396; Read vs. Snell, 2 Ib. 642; Hughes vs. Sayre, ubi supra; Fearne, 478, Butler’s Ed.
By the term survivors the testator may have intended all the children who, at the death of any one, had not died childless, including those who, having died, had left children, as well as those still living; and if so, any who had died leaving issue, took a transmissible interest, to which his children were entitled, and no action could be maintained for slaves included in the devise, unless they joined as plaintiffs. Such, it seems, would be the construction of the will, if the dying without issue, intended a dying without isssue at any time: but—
II. Nevertheless, we are strongly inclined to the opinion that, if the appellees be entitled to any available interest in the slaves, they are not entitled to the whole and exclusive right to them.
In declaring that, if any one of his children should die without issue, his or her legacy should be distributed among the surviving co-legatees, the testator may have intended by survivors those who, in the mean time, had not died without issue, or who, having died, had left issue, as well as those who, with or without issue, actually survived; and thus survivors would be understood synonimously with the others who had not also died childless. This interpretation accords with that given to similar language in several adjudged cases, some of which are cited in Roper on Legacies, first volume, page 426. Lord Eldon, without hesitation, decided to the same effect, in the case of Wilmot vs. Wilmot, 8 Ves.—which is almost directly in point. And, according to that and several other analagous cases, it would seem that, when a bequest is made to the survivors of any one of several children dying without issue, the testator should be understood as meaning by survivors, his other children, unless they also had died without issue, because his presumed object was that all who should have issue, should be entitled to an equal interest, and that nothing but death without issue should disturb that equality.
We are, therefore, inclined to think that each of Mrs. Birney’s sisters, who died leaving children, had, when living, such an interest in these slaves, as was transmissible, though prospective and contingent—if (as we have so far been supposing,) dying without issue mean a dying of *430 one of the testator’s children at any time, so as to entitle the appellees to any legal interest in the slaves on Mrs. Birney’s death. And upon this hypothesis, the appellees could not maintain their action for the entire interest.
The testator having bequeathed his estate to his wife for widowhood, directing that, on her marriage, it should be taken from her, and divided equally among his children, and that if any of them should die without issue,his or her part should be equally divided among the surviving children: held, that the testator intended a dying without issue in the event of the wife’s marriage and prior thereto; that upon the widow’s marriage, the estate was distributable among the children then living, and the heirs of those who had died leaving children ;after which, there could be no other division, though some of the children may have died childless afterwards. None of the children, in this case, having died when the widow married, they were all entitled as co-legatees in common, to immediate, equal and absolute interests in the testator’s whole estate, indefeasible by any subsequent event contemplated by the will.
III. But we have not deemed it necessary to speak more definitively on this point, or to give a judicial opinion respecting it, because, in our judgment, the testator intended only a dying without issue in the event of his wife’s marriage and prior thereto.
The estate was only loaned to her during her widowhood—and, having been bequeathed to the testator’s children, on the contingency of her marriage alone, it would have been unbequeathed after her death, and have been therefore distributable according to law, had she never married, and in that event, the interest of each distributee would have been, at her death, absolute, and not subject to be determined by the distributee’s subsequent death without issue. This consideration alone tends persuasively to the conclusion that, by dying without issue, the testator meant a dying before the period for distribution among his children.
But there are other equally cogent co-operating considerations.
First. We are inclined, from the context and subject matter, to understand the testator as intending that as, in the contingent event of his wife’s marriage, it was not improbable that some of his children might, in the mean time, have died childless, therefore, in that event, and that only, his whole estate, bequeathed in remainder to all his children equally as tenants in common, and to be distributed on his wife’s marriage—should be “ divided ” among his other children who had not died without issue and as not intending that, if after distribution, any of his children should, at any time, however remote, die without issue, the perishable property, alotted in the division to such legatee, should again be divided among his surviving children by his executors. It would certainly be somewhat unreasonable to presume, that the testator intended that, after a distribution of his estate among his children in the event of their mother’s marriage, they should hold only a life estate in property which *431 might be consumed in the use, and when too, in the event of her not marrying, they would have been entitled to the same proportionate distribution, absolutely and forever.
If the widow had never married, the estate at her death would have been unbequeathed, and distributable according to law; the interest of each, would then have been absolute, not subject to be determined by his subsequent death: this fact, together with the fact that the division—the only one that seems to have been contemplated—was to be made by the ex’ors, with other considerations stated in the opinion, tend to support the above conclusion.
The devise is thus: then the estate to be “divided equally among my children” naming them,“any or either of the above mentioned children should die,” his or her share to go to the survivors: presumed that the words, but if were accidentally omitted, before “any or either.”
Second. And the language of the will neither requires, nor, as we are inclined to think, consistently permits any such deduction of unreasonable intention. The testator directed and seemed to contemplate but one division; and that was on the marriage of his widow. In directing his executors in that event, to take his whole estate and divide it equally among his five children, he added, in effect, that, if any of them should in the mean time have died without issue, the division should be made among the others, that is, the division directed to be made upon the marriage of his widow; for, after such a division, he directed no other distribution.
The dying without issue seems to have been intended, not as a qualification of the right of each legatee after actual distribution among them, but as an explanation merely as to the mode of division, and a restriction upon the preceding and legatory sentence as to the persons who should be entitled to participate in the division directed to be made on the widow’s marriage: in other words, the dying without issue was to affect that division, but not the right of the legatees after distribution according to the will.
In closing the sentence in which he directed his executors to take his whole estate and divide it among his children, the language used by the testator according to the record before us, is — “any or either of the above mentioned children should die without issue;” which is so imperfect, as to show that there is a casual omission of some word or words before “ any ”—which we feel authorized to presume to have been—“ but if;” and if this be so, there could be no doubt that the dying without issue was intended to be such dying prior to the division directed in the antecedent portion of the same sentence, thus qualified by “but if” &c. But, whatever may be the omitted words or word, the direction to the executors to make a division, and the qualification as to dying without issue, being, as they certainly are—parts of one entire sentence, each is equally directory to the executors—each *432 equally applicable to the division to be made on the widow's marriage, and neither, therefore, applies to any other division, on any other contingency; or at any remote and indefinite period. Such is, we think, the plain grammatical import of the will.
How dying without issue is to be understood, when the devise is direct and immediate: how when there is an intermediate estate, and devise over in remainder.
Third. The law inclines strongly to favor a similar construction.
Had the bequest been direct and immediate to the testator’s children as tenants in common, then the only-question as to dying without issue, would have been, whether it meant a death in the testator’s lifetime, or at any time however remote. And nothing else appearing to aid in the interpretation, the law would incline to construe “ dying without issue ” as meaning the death of the legatee without issue in the testator's lifetime. See Stringer vs. Phillips, 1 Eq. Ca. Ab. 292; King vs. Taylor, 5 Ves. 806; Roebuck vs. Dean, 2 Ves. jr. 265; Hallifax vs. Wilson, 16 Ves. 171; Russel vs. Long, 4 Ves. 551; Brown vs. Bigg, 7 Ves. 279; Maberly vs. Strode, 3 Ves. 450; Bindon vs. Suffolk, 1 Pr. Wms. 96; Lowfield vs. Stoneham, 2 Strange, 1264.
But when, as in this case, the gift is not immediate but in remainder, and there is a bequest over on the legatee’s death alone, or death without issue, the inquiry will be enlarged, and the question will be whether the dying shall apply to the lifetime of the testator, or to the time when the remainder may be actually possessed and enjoyed, or to any time, whether before or after that event. And in such a case, the simple unexplained words “ dying without issue," will, according to a general and well established rule, be construed as meaning the death of the legatee after that of the testator, and before the time for distribution, or when the legacy may be reduced to possession. See 1 Roper on Leg. 409, and the cases therein refered to, of Galland vs. Leonard, 1 Swanston, 161, and of Harvey vs. McGlaughlin, 1 Price, 264.
And in such a case, the law will not incline to any other conclusion than that the death must be during the particular estate, unless the letter or context of the will plainly shows, that the testator intended a death either in his own lifetime, or at any time whenever it might occur.
A man got possession of a slave—part of the estate which his wife’s father devised to his children, to be divided among them upon the marriage of their mother—the part of any dying without issue to go to the survivors.—The possession was obtained after the marriage of the widow, but before distribution, and without the consent of the ox’or; but had been retained for above 30 years: held, that after such a lapse of time, he who had thus obtained & held the slave, must be presumed to have held it—not as still subject to distribution—but in severalty, as a legacy received after the right to it accrued, and absolutely as his own, in right of his wife—the lapse of time operating as a divestiture of any right which the co legatees may have had to the wife’s interest in consequence of her dying without issue.
This is abundantly evinced by the cases of Billings vs. Sandom, 1 Bro. C. C. 393, and of Douglas vs. Chalmer, 2 Ves. jr. 501, as well as by some of the cases also which have been herein before cited.
It seems to us, therefore, that, upon the marriage of the testator’s widow, all his children—all of them then being alive—were entitled, as co-legatees in common, to immediate, equal, and absolute interests in the testator’s whole estate—indefeasible by any subsequent event, provided for or contemplated by the will.
The only question, therefore, remaining for consideration, is whether, upon the facts, as agreed, Birney should be considered as holding the slaves, at the time of his wife’s death, still subject to distribution under the will, or as holding them in his own several right. If he was holding them in trust for distribution, though this suit could not be maintained, the appellees, as well as others, might, nevertheless, be entitled to have distribution. If he should be considered as holding in his own right, in judgment of law, as well as in fact, then his legal title should be deemed to be exclusive and unquestionable; because, there being no fact in the record which could counteract the legal presumption of title in him, arising from possession, ostensibly in his own right, and so long undisturbed and apparently acquiesced in, the judgment of the law is, that the slaves are his, in right of his wife.
Considering it but reasonable to infer that he claimed and held Esther and her offspring in his right as husband, we cannot resist the presumption, that the administratrix and the co-legatees, by their acquiescence, rendered his right as effectual as it would have been had Esther been expressly allotted to him, as husband, by a formal division of the estate before he took possession of her; and it seems to us, therefore, that, upon the agreed facts, it is now too late to disturb the arrangement thus implied, or question the title thus presumed to have been vested in the appellant long prior to the death of his wife.
*434 We are, therefore, of the opinion that, upon the agreed case, the judgment should have been for Birney.
Wherefore, it is considered that the judgment of the Circuit Court be reversed, and the cause remanded, with instructions to render judgment in bar of the action.