*Sweeney & Stuart, for appellants.*

*Ray & Walker, for appellees.*

---

## JNO. T. SWEENEY *v.* W. L. OLDHAM'S ADM'R.

### Wills—Meaning of Phrase "Dying Without Issue."

Where a will provides that if any of the testator's children should die without issue the portion of such child should descend to and be equally divided between the heirs of the testator's children or grandchildren as the case may be, the phrase "dying without issue," refers to such event before distribution has been made, but that in case of death without issue after the death of the testator's widow the rights of the children in her fee simple title was not to be affected.

APPEAL FROM LOUISVILLE CHANCERY COURT.

April 5, 1873.

OPINION BY JUDGE PETERS:

In 1825 Conway Oldham published his last will and testament, which was admitted to record in Jefferson County on the 5th of December of that year.

In the first clause of his will the testator devised to his wife, for and during her natural life, the plantation on which he then resided, containing five hundred and fifty three acres, with slaves, and a considerable amount of personal property; in a subsequent clause of his will he disposed of the estate in remainder in said tract of land in the following language: "*Item.* After the death of my wife

I give and devise the tract of land hereinbefore devised to her for life, to my two sons, John Conway Oldham and William Levi Oldham, their heirs and assigns forever, upon the condition that when they arrive at full age, they shall each of them separately pay to their sisters hereinbefore named, the sum of one thousand dollars specie, to be divided equally between them according to quantity, quality, and value as hereinafter directed. And I further direct that my son, Wm. Levi Oldham, shall be entitled to and have that part of said tract of land whereon my dwelling house and orchard is situate. The above sums to be paid in two equal installments of one and two years without interest." And after devising to each of his daughters slaves to a designated amount, he directs that when his youngest daughter shall arrive at full age his executors, or the survivor of them, shall sell the tract of land devised to him by his father, also the tract of land near Louisville which he purchased of the Merriweathers, on a credit of one, two, or three years, with interest, and the proceeds thereof to be equally divided between his six daughters or their heirs, and then follows a clause in this language: "*Item.* It is my will and desire and I do hereby direct that in case any one or more of my said children shall die without issue the part or portions of such child or children shall descend to, and be equally divided between the rest of my children or grandchildren, as the case may be."

John Conway Oldham, after he arrived at age, sold his half of the tract of land devised to his brother and himself by their father to Frederick Herr, and Mrs. Oldham, the widow of testator, purchased and took a conveyance to herself for one hundred and fifteen acres of the land her son, John Conway Oldham, had conveyed to Herr. After her death, said one hundred and fifteen acres of land were divided amongst her children and fifteen acres thereof were allotted to said William Levi Oldham. He having died, under a judgment rendered by the court below in a suit brought by his personal representative against his heirs and creditors to settle his estate, said fifteen acres of land were sold and appellant became the purchaser thereof and in response to a rule against him to show cause why he should not pay the purchase money into court, he says, after reciting the manner in which Wm. Levi Oldham acquired title to the land, that it was a part of his father's home tract, devised to John Conway Oldham, and by the will of Conway Oldham, his

father, it is provided that if one or more of his children should die without issue, the part of such child, or children in his real estate should descend to and be divided between the rest of his children, etc., that John Conway Oldham is alive and about 60 years old, is married, but has no issue, his brothers and sisters claim that if he should die without issue that the real estate which he took under the will of his father will revert to them; and on account of this defect in the title he insists he should not be compelled to take and pay for the land.

He also says that at the death of Wm. Levi Oldham the title which he had to said land descended to his two children, who are infants, for whom a guardian *ad litem* was appointed to defend said suit; that said guardian *ad litem* filed an answer in his own name, and that no answer was put in by, or for the infants, and in consequence of the defective preparation of the cause and the insufficiency of intestate's title to the land he can not get a good title, and should not therefore be compelled to pay for it.

In this investigation it is necessary to ascertain first what meaning the testator intended should be given to the words: *"in case any one or more of my said children shall die without issue,"* etc. Did he mean that if one or both of these devisees in remainder should die before his own demise, the land should be divided between the rest of his children? Or did he mean a dying without issue in the lifetime of his widow, and before said devisees came into the possession of the estate, or did he mean a dying without issue at any future period, however remote? By the direct devise to these two sons, they took a fee simple title to the land after the death of their mother, charged with the payment of one thousand dollars each to their sisters, to be paid in one and two years after they arrived at 21 years of age. It is not reasonable to presume that the testator intended to require their devisees to pay $1,000 each to their sisters in consideration of the devise of the land to them, probably before they were entitled to the possession and enjoyment of the estate; and by a subsequent clause in his will convert their fee simple estates into estates for life only. In his will he directs real estate to be converted into money when his youngest daughter arrives at age, and the proceeds of the real estate directed to be sold to be divided amongst his daughters. Can it be that he intended that his daughters should have only a life estate in the money, the pro-

ceeds of real estate, in case they died without issue, when from its very nature the money would be consumed in the use.   The clause under consideration applies to the daughters of the testator, whose legacies were principally in money, and to whom he devised no real estate as well as to his sons to whom he devised land.

After the purchase money for the land which the testator directs to be sold for the benefit of the daughters was collected, which could not be done under two years after his youngest daughter arrived at age, and perhaps three or four years, he directed distribution to be made amongst them, and the home tract of land to be divided between his sons, John and William, after the death of their mother, before the ordered distribution could be made amongst his daughters.   He knew years must elapse, and he also knew that even a greater number of years *might pass* by, before the division of the land devised to his said sons could be made, and that it was not improbable that some of his large family of young children might die childless, and that some one or more might die leaving children before the distribution or division could take place, and he therefore intended to the *"dying without issue"* as an explanation of how the division and distribution should be made on the happening of that event, before said division or distribution was made, but that the dying without issue of either of the devisees of the land after the death of the widow was not to affect their right and they then held it in fee simple.

We think the language of the will neither requires, nor consistently permits any other construction, and that our conclusion is consistent with adjudged cases and especially the case of *Birney v. Richardson, etc.,* 5 Dana 424.

As to the other objection to the judgment it appears that the infant defendants were regularly served with process, a guardian *ad litem* was appointed by the court after the process was returned executed, and the guardian answered for them and controverted all the allegations of the petition prejudicial to their interests, which we consider a sufficient answer.

Judgment *affirmed.*

*H. C. Pendell, for appellant.*

*Pirtle & Caruth, for appellees.*