## Bradshaw, et al. v. Williams.

(Decided October 6, 1910.)

Appeal from Christian Circuit Court.

1. Wills—Devise for Life—Remainder to Third Person—Restriction —Dying Without Children.—Where an estate is devised to one for life with remainder to another, with the provision that if the remainderman should die, then to a third person, the words "dying without children or issue," are restricted to the death of the remainderman before the termination of the particular estate.

2. Same—No Intervening Estate—Defeasible Estate.—If, however, there be no intervening estate, and no other period to which the words "dying without issue" may be reasonably referred, they are held to create a defeasible fee which is defeated by the death of the devisee at any time without issue then living.

HESTER & ALLENSWORTH and D. P. SMITH for appellants.

SELDEN Y. TRIMBLE, J. W. DOWNER and TRIMBLE & BELL for appellee.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Affirming.

Shandy A. Holland died in the year 1872, a resident of Christian county, Kentucky. He left a will which was duly probated in the Christian county court and is as follows:

"The last will and testament of Shandy A. Holland, of Christian county and State of Kentucky. Being of sound mind and disposing memory do make the following disposition of my estate:

"1st. I will that all my just debts be paid.

"2d. I will to my beloved wife, Almeda, three hundred and fifty acres of land embracing the dwelling in which we now live, begining on my northwest corner and running with my line south till it reaches a line running then the lane by the dwelling house, running east far enough to embrace the number of acres above mentioned and thence with that line west to the beginning, to have and to hold the same for a home for herself and our unmarried daughter during her life and at her death to belong to our youngest daughter, Mary Elizabeth.

"3d. I will that the remaining part of this tract of land be equally divided between our three daughters, namely, Francis A. Bradshaw, Sarah A. and Almeda W. Holland, and if it cannot be equal in value then amount of difference is to be made up in money.

"4th. I will that my interest in the Lundram & Majors tracts of land be sold to the highest bidder whenever my executrix hereinafter mentioned thinks best to do so, requiring one-fourth of the purchase money in hand and the balance on whatever time she may think best, requiring personal security and retain a lien on the land until all the purchase money be paid, the tract of land in the State of Missouri to be sold in like manner as above stated of my Kentucky lands.

"5th. I will that my wife Almeda take possession of my entire estate not otherwise disposed of and to sell such at public auction as she may think best for the estate.

"6th. I will that out of the moneys and stocks in hand that there be given to each one of the above-named children the sum of five thousand dollars, the sums that have been advanced included, the remainder of my moneys and bank stocks and county bonds be retained in the hands of my wife Almeda so long as she may desire

it or that she remains my widow, but in case of her second marriage, I will that she have one-third of my estate laid off for her benefit during life and that at her death the entire estate except the land before disposed of be equally divided between the four above-named daughters and further if my wife is disposed to give off more than that above mentioned to our daughters, she must give to each one the same amount at the same time so that all may be equal in the estate, and further I want the education of each one of the children to be as thorough as can be had and the expense of same to be paid out of my estate before division is had or so much as may be thought necessary for that purpose be set apart for that purpose.

"7th. I will that in case that either of my daughters die leaving no living heir of their body, that the property received by them from my estate and that of their mother's be given to those or their living children to have and to hold during life.

"8th. I will and appoint my beloved wife, Almeda, my executrix to carry out this my last will and testament.

"9th. I will that the court take her without requiring of her any personal security, as I have full confidence in her ability to attend to it.

"10th. I will that if my wife wants any assistance, to aid her in attending to the business, she can make her own selection of the person to assist her, but no signature will be binding in connection with this business but her own.                              "S. A. HOLLAND."

The testator left surviving him a widow, Almeda Holland, and four children, to-wit: Francis A. Bradshaw, who is now dead, Sarah A. Holland, now Sarah A. Forbes, Almeda W. Holland, now Almeda W. Garnett, and appellee, Mary Elizabeth Williams. The testator's widow died many years ago, without having remarried. Upon her death, all of the estate not theretofore divided, was divided equally between the testator's four daughters.

On October 1st, 1883, Sarah A. Forbes and her husband, W. A. Forbes, sold and conveyed by proper deed to Joseph H. Williams, husband of Mary Elizabeth Williams, 155 1-2 acres of land which had been allotted to Sarah A. Forbes. Joseph H. Williams died in the year 1902, leaving a last will and testament which was duly probated and by which he devised the whole of his estate, including the 155 1-2 acres, to his wife, Mary Elizabeth Williams.

This action was instituted by appellee, Mary Elizabeth Williams, against the children and grandchildren of her father, Shandy A. Holland, for the purpose of quieting her title to the 350 acres and the 155 1-2 acres of land in question, and to obtain a construction of the will of Shandy A. Holland. The questions involved were raised by appropriate pleadings, and the chancellor held that, as Mary Elizabeth Williams and Sarah A. Forbes each outlived her mother, they took an estate in fee simple in and to the two tracts of land in question, and that the conveyance from Sarah A. Forbes and her husband to Joseph Wilhams and the devise of the property by the latter vested in Mary Elizabeth Williams the absolute fee simple title to the 155 1-2 acres of land. It was accordingly adjudged that none of the other heirs at law or descendants of Shandy A. Holland had any interest in the property involved, either in possession or remainder, and that Mary Elizabeth Williams' right, title and claim to the two tracts of land be forever quieted against any and every adverse claim of the defendants in the action. From this judgment this appeal has been prosecuted.

For the appellants it is insisted that the daughters of Shandy A Holland took only a defeasible fee in the property devised by him, which was subject to be defeated by their death at any time without heirs of their bodies. It is perfectly plain from the language of the will that the testator, in using the words "in case either of my daughters die leaving no living heirs of their body," had no reference to the death of any one of them during his life time. That phase of the question may, therefore, be eliminated from the case.

The sole question left for determination, then, is: Did the testator mean an indefinite failure of issue (that is, the failure of issue whenever it might occur), or a failure of issue before the period fixed for distribution?

While the purpose of construing a will is to arrive at the intention of the testator, yet, in seeking the intention of the testator we must construe the language of the will in the light of the uniform rules of interpretation adopted by this court. Among the rules so adopted is one to the effect that where an estate is devised to one for life, with remainder to another, with the further provision that, if the remainderman should die without children

or issue, then to a third person the words "dying without children or issue" are restricted to the death of the remainderman before the termination of the particular estate. (Harvey v. Bell, &c., 118 Ky. 512; Mercantile Bank of New York v. Ballard's Assignee, 83 Ky. 481; Ferguson, &c. v. Thomason, 87 Ky. 519; Pruitt v. Holland, 92 Ky. 641; Birney v. Richardson, 35 Ky. 424.) If, however, there be no intervening estate and no other period to which the words "dying without issue" may be reasonably referred, they are held, in the absence of something in the will evidencing a contrary intent, to create a defeasible fee which is defeated by the death of the devisee at any time without issue then living. (Harvey v. Bell, et al., supra; Hart v. Thompson, 42 Ky. 482). On the other hand, the courts, in construing such provisions in a will, do not look with favor upon indefinite failure of issue, but are inclined to limit the "dying without issue" to a period before the distribution of the estate.

Bearing these rules of construction in mind, let us examine the language of the will. The testator first gives to his wife, Almeda Holland, the 350 acres of land in controversy for and during her life, with remainder to his daughter, Mary Elizabeth. The death of Mary Elizabeth without heirs of her body may, therefore, be referred to her death before that of her mother, to whom was devised the particular estate. Following the above devise and after providing a farm for each of his daughters, the testator intrusts the whole of his estate, both real and personal, to his widow, with power to sell the land not devised. She was directed to distribute $5000.00 to each of his four daughters and was authorized to pay them as much more as she chose, provided all were made equal in the distribution. All the remainder of his estate was to be held by his widow so long as she desired, or so long as she remained his widow. In the event of her second marriage, one-third of the estate was to be laid off to her for her benefit during life. At her death there was to be a final distribution of all his estate among his daughters. Here, then, we have a period of distribution to which the death of the testator's children without heirs of their bodies may be reasonably referred. It is insisted, however, by appellants that the language of the testator plainly discloses a contrary intention, for, in clause 7, he refers to property received by them "from my estate and that of their mother's," and, as

they could not receive any of their mother's estate during her life time, he could not have referred to their deaths during the life time of the mother. It is manifest that the testator was not attempting to devise his wife's estate; that he had no power to do so. When he referred to "the property received by them from my estate and that of their mother's," he evidently meant his own property, which they would inherit direct from him, and his other property, which would come to them through their mother; as provided in clause 6 of his will.

Upon careful consideration, we see nothing in the will which would justify us in holding that the testator meant that the estates of his children should be defeated by an indefinite failure of issue rather than by their death before the period fixed for distribution. When, therefore, appellee, Mary Elizabeth Williams, and Sarah A. Forbes survived their mother, and the testator's entire estate was distributed, they became seized with an indefeasible fee to their respective shares. That being true, it follows that the judgment of the chancellor is proper and should be affirmed, and it is so ordered.