## Wilson v. Wilson, et al.

(Decided January 21, 1913.)

### Appeal from Scott Circuit Court.

Wills—Construction of—Intention of Testator—Character of Estate Passed by Will.—A testator devised the land upon which he resided to his wife for life, and directed that at her death it should be equally divided between his surviving children, and further provided that if any of the children should die previous to his wife's death leaving issue of the body, then such child or children should occupy the place of the deceased parent. Clause 3 directing that the remainder of his estate, after having provided for his wife, be divided equally among his five children, naming them, and clause 4 being but an amplification of clause 3. Held, that the fee in the dower was clearly intended to be divided equally among those of his children who were living when his wife died, the period when they were to come into possession and enjoyment of this part of the estate, and in an action for the construction of the will the chancellor erroneously adjudged that the children took under the will a defeasible fee.

J. H. POLSGROVE, for appellant.

OPINION OF THE COURT BY JUDGE LASSING—Reversing.

This appeal involves the construction of the will of Ambrose Wilson, deceased, and particularly the fourth clause thereof. Said will is as follows:

"Recognizing the uncertainty of life and being de-

sirous of disposing of my estate as I in my judgment think best, I, Ambrose Wilson, of Scott County, Kentucky, do make this my last will and testament, hereby, revoking all former ones.

"1st. I desire all my funeral expenses and just debts paid.

"2nd. I give to my beloved wife, Hulda Wilson, 300 acres of land where we reside, purchased of Brooks and McManus, together with all the household and kitchen furniture all to be hers during her life, at her death to be divided equally between the surviving ones of our children, Max, Notie, Mary, Hulda and Ambrose, or if any of the above named children should die previous to her death leaving living issue of the body, then such child or children to occupy the place of the deceased parent.

"3rd. I give to my children, Max, Notie, Mary, Hulda and Ambrose the remainder of my estate to be divided equally between them.

"4th. Should any of the above named children die without leaving living issue of the body then his or her said portion to revert back to the surviving brothers and sisters equally or if any of the above named children should be dead leaving living issue of the body then such child or children to occupy the place of the deceased parent.

"Given under my hand this 25th day of January, 1890.

(Signed) A. Wilson."

Signed in the presence of, "W. M. Shepp, James H. Leer."

The testator died in September, 1897. In December of the same year, after the probate of his will, by proper proceedings in the Scott county court his landed estate, other than that devised to his wife for life, was divided among his children, all of those named in the will being alive at the time of his death and at the time the land was divided. Ambrose Wilson brought suit, in which he asked for a construction of his father's will, in order that he might determine the character and extent of his title to the property allotted to him in the division of his father's estate. The chancellor, upon consideration of the pleadings and will, was of opinion that each of said children took, under said will, a defeasible fee. Being dissatisfied therewith, the plaintiff appeals.

While no fixed rule has been, or can be, adopted as a guide to courts in the construction of wills, for the simple reason that no two are exactly alike, still certain general principles have been announced, which serve to guide or aid the court in arriving at the testator's intention. These general rules, or principles, are admirably stated in Bradshaw v. Williams, 140 Ky., 160, where the court says:

"While the purpose of construing a will is to arrive at the intention of the testator, yet, in seeking the intention of the testator we must construe the language of the will in the light of the uniform rules of interpretation adopted by this court. Among the rules so adopted is one to the effect that where an estate is devised to one for life, with remainder to another, with the further provision that, if the remainderman should die without children or issue, then to a third person the words 'dying without children or issue' are restricted to the death of the remainderman before the termination of the particular estate. (Harvey v. Bell, &c., 118 Ky., 512; Mercantile Bank of New York v. Ballard's Assignee, 83 Ky., 481; Ferguson v. Thomson, 87 Ky., 519; Pruitt v. Holland, 92 Ky., 641; Birney v. Richardson, 35 Ky., 424.) If, however, there be no intervening estate and no other period to which the words 'dying without issue,' may be reasonably referred, they are held, in the absence of something in the will evidencing a contrary intent, to create a defeasible fee which is defeated by the death of the devisee at any time without issue then living. (Harvey v. Bell, et al, supra; Hart v. Thompson, 42 Ky., 482). On the other hand, the courts, in construing such provisions in a will, do not look with favor upon indefinite failure of issue, but are inclined to limit the 'dying without issue' to a period before the distribution of the estate."

It will be observed that the testator, in clause two, gave to his wife a life estate in the home farm, consisting of some 300 acres, and then directed that, at her death, it should be divided equally among those of his five children, naming them, who should then be living, and if any of the said children should die before their mother, leaving a child or children, then said child or children should occupy the place of its parent. In this clause of the will, the fee in the dower was clearly intended to be divided equally among those of his chil-

dren who were living when his wife died, the period at which they were to come into possession or enjoyment of this part of his estate. In clause three, he directs that the remainder of his estate, after having provided for his wife, be divided equally between his five children, naming them. In clause four, which is an amplification, as it were, of clause three and must be read in connection with it, he provides that, if any of his children should die, without leaving issue of the body, then his or her portion should go to the surviving brothers and sisters equally, or to the survivors of them, i. e., the children of such as should then be dead. Undoubtedly it was not the purpose of the testator to give to any of his children an estate in his land, less than the fee; but, he was simply aiming to make it more explicit that he wished his estate divided among those of his children, who were living at the time of its distribution. The language used in clause four is susceptible of this construction, and no other construction harmonizes clause four with clause three; for he says plainly, in clause three, that he gives the remainder of his estate to his five children and directs that it be divided equally among them, and in clause four he merely states, in a different way, that if any of the five children should die leaving no child or children, then the estate should be divided among those living, putting the child or children of any who might, in the meantime, have died, in its parent's stead.

This will was written some nine years before the testator died. Evidently, when he wrote it, he did not contemplate that death was imminent; hence, the language used looked to the future, and when the testator said, in clause four, "should any of the above named children die without leaving living issue of the body then his or her said portion to revert back to the surviving brothers and sisters equally" he meant dying without living issue before the period fixed for distribution. He intended that his estate should go to his children, or those of them who were living at the time they were to come into possession, to-wit: the time of division. The language in clause two throws some light upon, and makes plain, the intent of the testator in the use of the language found in clause four. So that, when clause four is read in connection with clause two, it is apparent that the testator intended his children to take

the fee in the property which he gave them, and the chancellor erred in not so holding.

Judgment reversed and cause remanded, with instructions to enter judgment in conformity with this opinion.