## Parrott v. Crosby, et al.

(Decided March 8, 1918.)

### Appeal from Shelby Circuit Court.

1. Wills—Construction—Parol Evidence.—The general rule is that a will is to be construed from the written language of the instrument, and parol or extrinsic evidence is not admissible to add to, vary, or contradict its terms.

2. Wills—Construction—Ambiguity—Evidence.—Where the language of a will is uncertain and doubtful, or contains a latent ambiguity, extrinsic evidence may be admitted for the purpose of explaining the will, the situation of the testator, and the facts and circumstances surrounding him at the time of the execution of the will; but such evidence is not admissible where the language of the will is plain and unambiguous.

3. Wills—Construction—Meaning of Words.—The words of a will will be given their usual and correct meaning unless a contrary intention appears.

4. Wills—Construction.—Where a testator directed that the residuum of his estate be "divided between my nieces Fanny Harrington Mary Crosby Ella Parrott to receive $500.00 and W. L. Graves my nephew to receive $500.00 in trust and in no event is it to be liable for any debts he may have now or may contract," Ella Parrott and W. L. Graves each took $500.00 and the rest of the estate is to be divided equally between Fanny Harrington and Mary Crosby.

RALPH GILBERT for appellant.

WILLIS, TODD & BOND for appellees.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

This appeal presents for construction the residuary clause of the will of the late Richard H. George, of Simpsonville, Shelby County, Ky. At the time of his death Capt. George was a widower with no descendants, his nearest kin being three nieces and one nephew, Ella Parrott, Mary Crosby, Fanny Harrington, and W. L. Graves, the children of a deceased sister.

Capt. George died February 11, 1916, leaving an estate worth about $18,000.00. On August 6, 1914, he wrote his will making many special devises, including $2,500.00 to his sister-in-law, Betty D. Gaines, who had lived with him and cared for him for many years; $500.00 in trust for Betty D. Gaines for life, with remainder to a charitable institution; $200.00 to Calien Crosby; $200.00 to his

namesake, Richard George Harrington; $200.00 to his namesake, Richard Haynes; $100.00 to Richard George Houseworth Pendleton; $100.00 to his cousin, Mary Young Shoemaker; $100.00 to his cousin, Haynes; $100.00 to his friend, Chaplin; and $100.00 to Lindsey Nunn.

After making these special devises the will provided that:

". . . the rest of my estate I wish divided between my nieces Fanny Harrington Mary Crosby Ella Parrott to receive five hundred dollars .W. L. Graves my nephew to receive five hundred dollars in trust and in no event is it to be liable for any debts he may have now or may contract."

The question is, who takes the residuary estate, the three nieces, or only Fanny Harrington and Mary Crosby?

Although this is a suit in equity to construe the will, much proof has been taken tending to show that Capt. George was mentally and physically quite infirm at the time he wrote his will and perhaps incapable of making a will.

Among other things it is shown that on November 24, 1915, about fifteen months after he wrote his will, Capt. George was declared incompetent to manage his business, pursuant to an inquest, and that a committee was appointed and took charge of his business affairs and managed them until his death.

On the other hand, his sister-in-law, Miss Gaines, testified that the inquest and the appointment of the committee was necessary by reason of Capt. George's eyesight having become so greatly impaired that he was unable to sign checks or attend to any business. In this connection it was further shown that Mrs. Crosby is a widow with three married children, and lived immediately across the street from Capt. George; that Mrs. Harrington is a widow with three grown children; that Mrs. Parrott is a married woman with an adopted child who was married; that W. L. Graves, the nephew, is insolvent and an unsuccessful business man; that the testator was a successful farmer and business man of more than an average education, well read and progressive; and that he wrote his own will.

Appellees object to this testimony, contending that parol testimony is inadmissible for the purpose intended.

The general rule is that a will is to be construed from the written language of the instrument, and parol

or extrinsic evidence is not admissible to add to, vary, or contradict its terms. Stephen v. Walker, 8 B. M. 600; Mitchell v. Walker, 17 B. M. 61; Allan v. Van Meter, 1 Met. 264; Jackson v. Payne, 2 Met. 567. Where the testator's intention is expressed in plain and unambiguous language parol and extrinsic evidence is inadmissible to show an intention different from that expressed in the will. Long v. Duvall, 6 B. M. 219; McCauley v. McCauley, 87 Ky. 191; Chenault v. Chenault, 88 Ky. 83; Mudd v. Mullican, 11 Ky. L. R. 417, 12 S. W. 263, 385; Tuttle v. Berryman, 94 Ky. 553; McBrayer v. McBrayer, 95 Ky. 475; Gray's Admr. v. Pash, 24 Ky. L. R. 965, 66 S. W. 1026; 40 Cyc., 1427.

But where the language is doubtful or ambiguous, parol or extrinsic evidence is sometimes admissible to give application to the words of a will, but not to change the import of a devise. Mitchell v. Walker, 17 B. M. 61. Thus, when it is necessary, in order to enable the court to ascertain the intention of the testator, parol evidence may be admitted for the purpose of showing and explaining a latent ambiguity in the will; but not ordinarily for the purpose of explaining a patent ambiguity, apparent on the face of the instrument. 40 Cyc. 1429; Smith v. Smith, 24 Ky. L. R. 1964, 72 S. W. 766.

The rule is stated as follows in 40 Cyc. 1431:

"Where the language of a will is uncertain and doubtful or contains a latent ambiguity, extrinsic evidence may be admitted, for the purpose of explaining the will, the situation of the testator, and the facts and circumstances surrounding him at the time of the execution of the will, such as evidence as to the fact that the will was written by the testator himself and that he was not a professional man, or as to the condition of his family and the amount and character of his property, or as to his feelings toward and his relations to the persons affected by the will, or as to the condition of his beneficiaries. Such evidence, however, is not admissible where the language of the will is plain and unambiguous; nor is evidence of circumstances existing subsequent to the making of the will admissible for the purpose of showing the testator's intention."

See also, Henry v. Henry, 81 Ky. 342; McClelland v. McClelland, 132 Ky. 284; Reuling v. Reuling, 137 Ky. 637.

But there is here no question of identity either as to a devise or a devisee, and all the residuary devisees are

of the same kinship to the testator. And, we do not think that the slight ambiguity in the meaning of the residuary clause can be affected one way or the other by the extrinsic evidence offered. We must, therefore, rely upon the language of the will in order to ascertain the testator's intention.

Mrs. Parrot contends that the residuary clause above quoted should be construed as dividing the residuary estate equally among the three nieces, Fanny Harrington, Mary Crosby, and Ella Parrott. The circuit court, however, divided the residuary estate equally between Mrs. Harrington and Mrs. Crosby, after giving Ella Parrott $500.00 and W. L. Graves, the nephew, a similar sum. Mrs. Parrott alone appeals.

Although the will as well as the residuary clause above quoted is almost wholly without punctuation or capital letters to show the beginning of sentences, we have little doubt that the testator meant that Ella Parrott was to have $500.00; that W. L. Graves, his nephew, was to have $500.00 in trust; and that the rest of his estate was to be divided between his two nieces, Fanny Harrington and Mary Crosby.

The language clearly shows that W. L. Graves is to take only $500.00, and excludes the idea that he is to participate in the residuary estate. And, the fact that his name and the name of Mrs. Parrott stand in precisely the same relative positions as to legacies of $500.00, shows that she took the same interest as Graves.

If the qualifying clause "to receive five hundred dollars" refers equally to Fanny Harrington, Mary Crosby and Ella Parrott, there is no one named to take the residuary estate, and that portion of the clause is ineffectual. In order, therefore, to give effect to both portions of the clause the five hundred dollar phrase must be read so as to refer only to Ella Parrott, and the residuary phrase so as to refer to "my nieces," Fanny Harrington and Mary Crosby.

Although old and somewhat feeble when he wrote his will, Capt. George was, as heretofore stated, a man of strong character, well educated, and well informed about business affairs and the current topics of the day. It is to be presumed therefore that he intended the words he used should be given their usual and correct meaning, unless a contrary intention appears. Webster's Unabridged Dictionary defines "between" as "belonging in common to two; shared by both; belonging to or partici-

pated in by two, and involving reciprocal action or affecting their mutual relation; 'between' etymologically indicates only two."

While "between" may sometimes mean "among," it will be construed as having been accurately used unless there be something in the instrument to show it was used in a different sense. McIntire v. McIntire, 192 U. S. 116; Van Houten v. Hall, 73 N. J. Eq. 384.

In Records v. Fields, 155 Mo. 323, where the will provided that "the balance of my property and money I want equally divided between the heirs of William Fields and James Fields, deceased," it was held that the property should be equally divided between the heirs of James Fields and the heirs of William Fields, the court saying:

"Unquestionably, the word conveyed the thought of two parts, a distribution with reference to two parts, one part to the heirs of James and the other part to the heirs of William. Not only is this the natural and ordinary meaning of the words, 'equally divided between the heirs of William and the heirs of James,' but this is also the true etymological signification of the word 'between.' The Century Dictionary says: 'Between is literally applicable only to two objects, but it may be and commonly is used of more than two where they are spoken of distributively, or so that they can be thought of as divided into two parts or categories, or in reference to the action or being of each individually as compared with that of any other or of all the others. Where more than two objects are spoken of collectively or individually, 'among' is the proper word." See also Shrie's Estate, 162 Pa. 369; Stoutenburgh v. Moore, 37, N. J. Eq. 68.

We think, therefore, it is reasonably apparent that by the language used the testator meant to give Mrs. Parrott $500.00 and a similar sum in trust to Wm. L. Graves, his nephew; and the rest of his estate should be divided between his nieces, Fanny Harrington and Mary Crosby.

Judgment affirmed.