## Poore et al. v. Poore et al.

(Decided December 7, 1928.)

### Appeal from Christian Circuit Court.

1. Wills.—Will devising to brother and sister of testatrix equal shares in residue of estate, and "in event of death of either to survivor," held to mean that, on death of either the brother or sister occurring before testatrix's death, survivor should have all.
2. Wills.—Depositions of third parties to prove that testatrix of will intended that, on death of either of two named legatees, survivor should take all, effect of which would be to make will, held inadmissible.
3. Conversion.—In the construction of wills, when land is directed to be sold and turned into money, courts of equity in dealing with the subject treat it as personalty.
4. Wills.—Under will providing for sale of testatrix's realty or personalty, one-half thereof which went to devisee was to be considered as personal property, disposition of which was to be determined by the laws of the state wherein devisee was a resident.

ALVAN H. CLARK, WHITE & CLARK and GORDON & GORDON & MOORE for appellants.

S. Y. TRIMBLE for appellants.

OPINION OF THE COURT BY DRURY, COMMISSIONER.—Reversing.

On March 16, 1926, Mrs. Fanny B. Bragg, a resident of Christian county, Kentucky, departed this life. On March 19, a paper dated May 11, 1925, was probated as

her will. Omitting the formal introduction and conclusion, that paper is:

"(1)  I. desire that all of my just debts be paid as soon as possible after my death and a marker placed at my grave.

"(2)  I hereby will, bequeath and devise the residue of my estate, both real and personal to my brother H. H. Poore of Christian county, Kentucky, and to my sister Mrs. Ella Turner, of Santa Monica, California, share and share alike, and in the event of the death of either to the survivor.

"(3)  I hereby appoint Douglas Graham, of Pembroke, in Christian county, Kentucky, executor of this my last will and testament, hereby authorize him to sell any and all real estate or personalty of which I may die possessed, at public or private sale, in his discretion and upon such time and terms and conditions as he may think best, and give him full power to convey title to the purchaser."

Mrs. Bragg was about 70 years old. Her husband, her ancestors, and all her descendants were dead. Her only relations were a brother, a sister, and some nieces and nephews, the children of deceased brothers. The names of these parties, and their relation to each other and to Mrs. Bragg, is indicated by the outline below, in which the names of those who were then dead are in italics, and following them are the names of their descendants then surviving.

H. H. Poore.
Ella Turner.
*Richard H. Poore*—Ruth Schleifer.

*Thomas Poore*—
- Will Poore.
- Richard H. Poore.
- W. H. Poore.
- James Z. Poore.
- Fannie Muehlke.
- Mary D. Sales.

*Fanny B. Bragg.*

From this it will be seen that, if Mrs. Bragg had died intestate, her property would have passed as follows: One-fourth to H. H. Poore, one-fourth to Ella Turner, one-fourth to Ruth Schleifer, and one twenty-fourth to each of the six children of Thomas Poore.

On the day this will was probated, Douglas Graham, the executor named therein, qualified as such and entered upon the discharge of his duties. On May 13, 1926 (54 days after the probate of this will and 57 days after the death of Mrs. Bragg), her sister and devisee, Ella Turner, then a citizen and resident of California, died intestate, and left surviving her neither husband, ancestors, nor descendants. H. H. Poore contends that, by the will of Fanny Bragg, Ella Turner took an estate that would be terminated by her death at any time, and, now that she is dead, he, as surviving beneficiary under the will of Mrs. Bragg, took her entire estate. Ruth Schleifer, Will Poore, et al. contend that as Ella Turner was alive when Mrs. Bragg died, she took an absolute fee-simple title to one-half of Mrs. Bragg's estate. To protect himself, the executor brought this suit against all of them, to obtain a construction of the will of Mrs. Bragg. The matter was heard, and the court sustained the contention of H. H. Poore, and adjudged that he was entitled to all of it. From that judgment Ruth Schleifer and the children of Thomas Poore have appealed.

This whole controversy grew out of the use in this will of these 12 words: "And in the event of the death of either to the survivor." The question is: Does this mean the death of either of these beneficiaries before the death of Mrs. Bragg, or does it mean their death at any time? It would seem that a moment's reflection should solve the problem, for Mrs. Bragg says, "and in the event of the death of either," thus speaking of death as something that might or might not happen, yet we know that death is the one dread certainty that comes to all of us; so she could not have meant death at any time, for that is not a contingency—that is a certainty. Therefore she must have meant the death of one of these before the happening of some other event. There is nothing in the will to indicate that she could have contemplated any other event than her own death, and it would seem, therefore, to follow that what she meant was, "and in the event of the death of either of them before my death, then to the survivor." Whether or not one of these beneficiaries might die was not a contingency. She knew they both would die. She did not know when, and the contingency indicated by this will was the possibility of the death of one of these beneficiaries before she died.

"Where there is an immediate gift in the will to A, and a disposition of the property to another 'in case of

his (A's) death,' or 'in the event of his death,' or with any similar expression referring to the death of A, not as an event which is certain to occur, but as a contingent event, no time being mentioned, the gift over will take effect only if A shall die during the lifetime of the testator." Underhill on the Law of Wills, vol. 1, p. 457, sec. 342. To the same effect are Alexander's Comm. on Wills, vol. 2, p. 1267, sec. 865; Schouler on Wills, Ex'rs and Adm'rs (6th Ed.) vol. 2, p. 1427, sec. 1283; Jarman on Wills, vol. 3, p. 605; Page on Wills, sec. 1139; Thompson on Law of Wills, p. 255, sec. 384; Thompson on Real Property, vol. 3, p. 713, sec. 2574; 37 Cyc. 631; 40 Cyc. 1499; 28 R. C. L. 260, sec. 233.

We have a very strong domestic case. In 1870, John P. Wills died testate, and, after making provision for his wife, then provided:

> "It is my will that, after the special devise above, that all my property be equally divided among my four living children, Martha Ann Flynn, John G. Wills, Benj. E. Wills and Mary Elizabeth Wills, under the restrictions and exceptions hereinafter made."

The restrictions and exceptions made by him in a later part of his will are these:

> "In case of the death of either of my children, I will that their said interest shall go to their children, in case they have any; if not, it is to go equally to my four living children, or the heirs of their body, or such as may be living."

John G. Wills survived the testator and took possession of one-fourth of his father's property. He sold a portion of this property to William S. Franklin, but Franklin refused to accept the conveyance tendered by Wills, because he questioned the power of Wills to convey him absolute title. Thereupon John G. Wills instituted an action against Franklin for specific performance. The trial court held that John G. Wills took only a life estate and dismissed the petition, whereupon John G. Wills appealed to this court, and in the case of Wills v. Franklin, 8 Ky. Op. 185, this court reversed the judgment of the trial court, and held that John G. Wills took a fee-simple title under the will of his father. Later John G. Wills died testate. Whereupon the children and

devisees of his father began an action in ejectment against the devisees of John G. Wills to recover the property which John G. Wills had taken under the will of his father, John P. Wills. They were successful and the devisees of John G. Wills appealed. In an opinion written by Judge Pryor, in Wills v. Wills, 85 Ky. 486, 3 S. W. 900, 9 Ky. Law Rep. 76, this court reversed that judgment, and again held that John G. Wills took a fee-simple title under the will of his father. The controlling applicability of that opinion becomes apparent when the words of contingency, upon the happening of which the devise over is to take effect, are placed side by side, with the words of contingency in this case.

In the case before us the words of contingency are:
"And in the event of the death of either."

In the will of John P. Wills the words of contingency are:
"In case of the death of either of my children."

The question is so thoroughly discussed in Judge Pryor's opinion that we shall not quote from it further than to say that the court held that the contingency of death to which the testator referred meant the death of John G. Wills during the lifetime of his father. He cites the case of Wren v. Hynes (2 Metc.) 129, which is to the same effect. In the recent case of Ford v. Jones, 223 Ky. 327, 3 S. W. (2d) 781, we had occasion to quote from the will of Salia E. McKinney. In that will the testator said:

"It is my wish after my death that all of my property, personal and real, be equally divided among my children. If one should die, then their proportion of my property should be equally divided among my surviving children."

In the case of Smith v. Tevis, 10 Ky. Op. 588, it was held that the words "surviving children," as there used, meant children surviving the testator.

The appellee is relying on the cases of Harvey v. Bell, 118 Ky. 512, 81 S. W. 671, 26 Ky. Law Rep. 381 and Atkinson v. Kern, 210 Ky. 824, 276 S. W. 977, and numerous others like them: but in all the cases upon which the appellee is relying there are double contingencies involved. Not only is there the contingency of death, but

there is united with it some other contingency. For example: In Harvey v. Bell, supra, the contingency was "dying without issue." In Atkinson v. Kern, supra, the contingency was "dying without heirs." In Linton v. Hail, 201 Ky. 698, 258 S. W. 111, the contingency was "dying without lawful issue." In Bradshaw v. Williams, 140 Ky. 160, 130 S. W. 985, the contingency was "dying leaving no living heirs of their body." In Ward v. Ward, 221 Ky. 391, 298 S. W. 938, the contingency was "dying without heirs." In Wallen v. Nicely, 222 Ky. 825, 2 S. W. (2d) 648, the contingency was "the death of the children of Roberta Wallen before her death." In Ferguson v. Thomason, 87 Ky. 519, 9 S. W. 714, 10 Ky. Law Rep. 562, the contingency was "dying without children or heirs of their body."

That a devisee will die is a certainty, and is known to the testator; but whether or not a devisee will die without issue is something the testator does not know, and such a contingency is sometimes referred to as a collateral contingency—at other times referred to as a double contingency. The existence of a double contingency in those cases referred to, whereas there is only a single contingency in the will before us, renders the opinions written in those cases inapplicable in this case. Moreover, those cases are written under and are controlled by section 2344 of Kentucky Statutes.

Appellee cites the case of Birney v. Richardson, 5 Dana, 424; but a sufficient answer to that is to say that that case was overruled in Best v. Conn, 10 Bush, 36. Clements v. Reese, 74 S. W. 1047, 25 Ky. Law Rep. 221, does not support appellee's contention, because the devise made to the children of Clements was postponed by an intervening life estate, and the survivorship provided by that will was surviving the life tenant.

The case of Harmon v. Dyer, 12 S. W. 774, 11 Ky. Law Rep. 654, does not support him, because the property was willed by the testator to his widow during widowhood, with provision that, when his wife married or died, Mary Bell Harmon should become his sole heir. The widow remarried. Mary Bell Harmon thereafter died. The court held she died the owner of an absolute estate.

Appellee cites and relies on the case of Morton v. Morton, 120 Ky. 251, 85 S. W. 1188, 27 Ky. Law Rep. 661. The testator, W. F. Norton, Jr., in that case, gave his

property to his cousins, Mary Morton and Gabriel Morton, and provided:

> "In the event of the death of either one of the two cousins, named above, the interest of that one to belong to the other of the two cousins. If Gabriel Morton should be the last to die, then the said family home to be the property of his daughter, Gabrielle Morton; . . . if Mary Morton should be the last to die, then the family home to be the property of her half-sister, Aldine N. Morton."

The court held that Mary Morton and Gabriel Morton took a joint life estate under the will in the property devised, the interest of the one first dying to go to the other for life only, with remainder in fee as to the whole to Aldine Morton in case Mary Morton should survive Gabriel Morton, but to Gabrielle Morton if Gabriel Morton should survive Mary Morton, which was clearly right, because the will plainly indicated that such was the intention of the testator, and the difference between that will and this one renders the Morton case inapplicable here.

Moreover, there is another reason that these cases, beginning with Harvey v. Bell and concluding with Morton v. Morton, are not applicable here, and that is that this property is to be treated as personal property, for the reasons hereinafter stated, and the principles announced in the case of Harvey v. Bell, etc., are not applicable to personal property. See Ireland et al. v. Cooper et al., 211 Ky. 323, 277 S. W. 483.

The court erred in holding that H. H. Poore took the whole of this estate, and should have held that, upon the death of Mrs. Bragg, H. H. Poore and Ella Turner each took an absolute fee-simple title to one-half of the property of Mrs. Bragg. The appellee took the deposition of several witnesses to prove that it was Mrs. Bragg's intention to give this property to her brother and her sister as long as they lived, and when one of them died at any time that the property should then go to the other absolutely. The court very properly sustained exceptions to those depositions, because it is not permissible to offer proof, the effect of which would be to make a will. As a general rule, testimony of the scrivener who wrote the will, or of the attesting witnesses, as to the testator's unincorporated or unexpressed understanding or intention, is inadmissible. 40

Cyc. 1429, 1431; 28 R. C. L. 281, sec. 252; McCauley v. Buckner, 87 Ky. 191, 8 S. W. 196, 10 Ky. Law Rep. 99; Wheeler v. Dunlap, 13 B. Mon. 291; Gray's Adm'r v. Pash, 66 S. W. 1026, 24 Ky. Law Rep. 693; Parrott v. Crosby, 179 Ky. 658, 201 S. W. 13; Martin v. Palmer, 193 Ky. 25, 234 S. W. 742; Violett's Adm'r v. Violett, 217 Ky. 50, 288 S. W. 1016; White v. Ponder, 180 Ky. 386, 202 S. W. 867.

"In examining such a will, or part of a will, the question for determination is not, 'What did the testator mean or intend to say,' but 'What is meant by what he did say?' Courts may be of the opinion that he did not intend to say what he did say: but they are not thereby authorized to give to the will any construction other than that which is justified by a fair interpretation of the wording and language of the will itself." Futrell v. Futrell, 224 Ky. 814, 7 S. W. (2d) 232; Weedon v. Power, 202 Ky. 542, 260 S. W. 385; Walton v. Jones, 216 Ky. 289, 287 S. W. 710; Howard v. Cole, 124 Ky. 812, 100 S. W. 225.

It will be noted that in this will Mrs. Bragg directs her executor to sell all her property and convert it into money. It is a well-settled rule in equity, in the construction of wills, that when land is directed to be sold, and turned into money, courts of equity, in dealing with the subject, treat it as personalty. 13 C. J. 859, and Kentucky cases there cited. Thus the one-half of Mrs. Bragg's estate which went to Mrs. Turner is to be considered as personal property, and the residence of Mrs. Turner is in law the situs of that property. Mrs. Turner died a citizen and resident of California; therefore the disposition of her half of this property must be determined by the laws of that state, and upon the return of this case the court will permit the parties to so amend their pleadings and offer such proof as to show who is entitled to this property under the laws of California, and will dispose of it accordingly.

The judgment is reversed, with directions to set it aside, and in lieu thereof to award to the personal representatives of Mrs. Turner, or whoever may show themselves entitled thereto, one-half of the estate of Mrs. Bragg, and to award the other half to H. H. Poore. The court will permit the pleadings to be amended as indicated, and such other proceedings to be had as may be consistent herewith.